266 P.3d 905 (2011)
165 Wn. App. 10
WASHINGTON FEDERAL SAVINGS & LOAN ASSOCIATION Successor by Merger to First Mutual Bank, Respondent,
v.
Dale E. ALSAGER and Betty J.L. Alsager, husband and wife, Appellants.
No. 66019-5-I.
Court of Appeals of Washington, Division 1.
October 24, 2011.
Publication Ordered December 13, 2011.
*906 Rhys Alden Sterling, Attorney at Law, Hobart, WA, for Appellants.
Annette Elena Cook, David A. Weibel, Bishop White Marshall & Weibel PS, Seattle, WA, for Respondent.
COX, J.
¶ 1 The terms of a binding agreement between parties are evidenced by their objective manifestation of mutual intent.[1] Here, the promissory note and deed of trust that Dale and Betty Alsager signed evidence the terms and conditions of their loan transaction with the bank. We reject their claim that their loan application for a specific fixed-rate loan evidences a lack of a meeting of the minds for the loan terms. Moreover, they had no right to rely on oral representations by a notary public regarding the nature of the loan that conflicted with the written terms of the loan documents. The bank was entitled to summary judgment and foreclosure. We affirm.
¶ 2 Dale and Betty Alsager applied to the predecessor of Washington Federal Savings and Loan Association for a $352,000 conventional, fixed-rate loan. There is no evidence in the record that the bank ever approved either the amount or interest rate of that request. Rather, the record shows that the bank only approved a loan of $304,000 with an adjustable interest rate, based on its underwriting work.
¶ 3 On January 12, 2007, the Alsagers met with a notary public at their home to sign the loan documents. At that time, they signed a promissory note, deed of trust, and other documents for a loan of $304,000 at an adjustable interest rate. They claim in this action that the notary told them that they were signing documents for a fixed-rate loan. They also claim that he rushed them through the signing process and failed to provide them with copies of the loan documents. It is undisputed that they had the opportunity to ask for more time to review the loan documents before signing but did not do so. Further, it is undisputed that they failed to request copies of the loan documents from Washington Federal that they claim not to have received from the notary.
¶ 4 The Alsagers made loan payments from March 2007 until May 2008. They have not made any further payments since June 1, 2008.
*907 ¶ 5 Washington Federal commenced this judicial foreclosure action due to these defaults in failing to make the required payments. The trial court granted its motion for summary judgment and entered a decree of foreclosure.
¶ 6 The Alsagers appeal.

THE LOAN CONTRACT
¶ 7 The Alsagers argue that no valid contract was formed because there was no meeting of the minds and, therefore, their failure to pay their loan does not constitute a breach of contract. We hold that the promissory note and deed of trust that they signed evidence the terms and conditions of their loan. Their failure to pay in accordance with these terms constitutes a breach that supports foreclosure.
¶ 8 Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] A material fact is one upon which the outcome of the litigation depends.[3] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[4] This court reviews de novo a lower court's order granting summary judgment, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party.[5]
¶ 9 The terms of a binding agreement between parties are evidenced by their objective manifestation of mutual intent.[6] A fundamental principle of Washington contract law is "that a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents."[7] Where a party has an opportunity to examine the contract prior to his agreement, and where such agreement is not induced through fraud or coercion, he may not claim ignorance of the contract's terms.[8] "The whole panoply of contract law rests on the principle that one is bound by the contract which he voluntarily and knowingly signs."[9]
¶ 10 We may affirm on any ground supported by the record.[10]
¶ 11 The threshold question here is whether the note and deed of trust constitute the loan documents that state the terms and conditions of the obligation, including the loan amount and interest rate. We conclude that they do.
¶ 12 Here, the Alsagers applied for a $352,000 conventional, fixed-rate loan. The bank declined to make such a loan, but offered one for $304,000 at an adjustable interest rate. Specifically, the promissory note and deed of trust that the Alsagers signed on January 12, 2007, clearly set forth these terms, among others. They accepted all these terms and conditions by voluntarily signing these loan documents. They do not argue that they were incapable of understanding these documents. They cannot now argue that they did not read and are not bound by the contracts that they signed.[11]
¶ 13 The Alsagers rely on the novel theory that they applied for a fixed-rate loan, and that because they signed documents for a loan that had an adjustable rate, there was no meeting of the minds. This argument has no merit.
*908 ¶ 14 It is true that "[t]he acceptance of an offer is always required to be identical with the offer, or there is no meeting of the minds and no contract...."[12] But, there is no evidence in this record that the bank ever agreed to a fixed-rate loan for $352,000. Rather, the only manifestation of the mutual intent of the parties to this loan is evidenced by the note and deed of trust. These are the only documents that fully and objectively reflect the amount, interest rate, security, and other essential loan terms for this transaction to which the parties agreed.
¶ 15 To the extent the Alsagers argue that their loan application constitutes an offer setting out the terms of the loan to which they were prepared to agree, their argument fails. Even if we considered the Alsagers' loan application an "offer to borrow"a highly dubious propositionthe bank never accepted that "offer." Rather, the bank presented them with loan documents setting forth the terms and conditions of the loan the bank would make. The Alsagers signed the documents, evidencing the objective manifestation of mutual intent as to the loan terms. That is all that is required to show that these loan documents constitute an enforceable contract.
¶ 16 The note that the Alsagers signed plainly states in bold lettering at the top of the first page:
FIXED/ADJUSTABLE RATE NOTE
. . .
THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.[[13]]
¶ 17 Several lines below the above text, the Alsagers, as borrowers, promise to pay the sum of $304,000.00. We note that this principal amount of the loan also appears in bold in the text of the promissory note.
¶ 18 In view of the plain statement that this was an adjustable rate loan for a specific sum, we reject the claim that there was no meeting of the minds between the parties as to these or any other essential terms of the contract.
¶ 19 The Alsagers attempt to bolster their claim that no contract was created by pointing to the virgule sign between "Fixed" and "Adjustable" in the title of the document quoted above. They argue that because a virgule sign (/) means "or," and as "Fixed" was included in the title, it was reasonable for them to continue to believe that the note they were signing was for a fixed-rate. This is unpersuasive.
¶ 20 While the virgule sign may generally be construed as an "or," this is of no help to the Alsagers. The statement quoted above, which appears in bold lettering immediately below the virgule sign, clearly stated that the loan offered by the bank had an adjustable rate. Thus, the virgule sign does not override the clear text that follows it.
¶ 21 The Alsagers also claim no contract was created because the notary who obtained their signatures on the loan documents did not give them sufficient time to review the documents and made oral misrepresentations to them. We disagree.
¶ 22 Similar arguments have previously been rejected by the supreme court in Skagit State Bank v. Rasmussen.[14] There, a mortgagor signed a promissory note after false oral representations were made to him about the loan documents.[15] He was also provided little time to read the loan documents. The supreme court emphasized that "a party whose rights rest upon a written instrument which is plain and unambiguous, and who has read or had the opportunity to read the instrument, cannot claim to have been misled concerning its contents or to be ignorant of what is provided therein."[16] The court *909 held that the contract was valid, even though the mortgagor
was busy when [presented with] the documents, spoke only briefly with [the agent], and signed the documents on the flat bed of a truck, there is no indication in the record that [he] did not have the time or opportunity, or could not have taken the opportunity, to read [them] ...[[17]]
¶ 23 Here, we assume for purposes of summary judgment only, that the notary rushed the Alsagers before they signed the documents. However, there is no evidence in the record that they could not have demanded to take more time to read the loan documents before signing. Had they done so, they would clearly have seen that this was neither a fixed-rate loan nor a loan for the amount they requested in their loan application. Their failure to take the opportunity to read the loan documents before signing them is fatal to their claim.
¶ 24 The other prong of the Alsagers' argument regarding their meeting with the notary is that he made oral representations to them that they were signing a fixed-rate loan. Because they had no right to rely on any such representations, we reject this argument.
¶ 25 The duty of parties to read any contract that they sign[18] does not apply when a contracting party has committed fraud, misrepresentation, or some other wrongful act.[19] A misrepresentation renders a contract void if the assertion induced the other party to enter into the contract and that party justifiably relied on the assertion.[20]
¶ 26 Here, however, the Alsagers could not justifiably have relied on any oral statements given the loan documents which they signed. Contained in the documents, directly above their signatures, was the following statement:
ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.[[21]]
¶ 27 Any oral representations made by the notary as to the nature of the loan directly conflicted with the terms of the promissory note and deed of trust. This was not a fixed-rate loan, as those documents plainly state. As the supreme court noted in Hollis v. Garwall, Inc.,[22] "admissible extrinsic evidence does not include: ... [e]vidence that would vary, contradict or modify the written word."[23] Because the oral representations made by the notary would directly modify the written note, they are not admissible as evidence.
¶ 28 Additionally, under the rule enunciated in Berg v. Hudesman,[24] the alleged oral representations of the notary regarding the nature of the note do not negate the signed contract.
¶ 29 Generally, extrinsic evidence is not admissible to add, modify or contradict a written contract, but under the Berg rule, Washington courts may consider extrinsic evidence relevant to discern parties' intent.[25] However, this court has held that the application of the Berg rule does not "apply where evidence would show an intention independent *910 of [a written] instrument."[26] Here, the written instrument was a clear offer of an adjustable rate loan for $304,000 and, thus, any oral representations to the contrary should not be considered.
¶ 30 Further, we note that the Alsagers have failed to show whether the notary was the bank's agent. Likewise, they have not demonstrated he had either actual or apparent authority to orally alter the written terms of the loan documents.[27] Nor can they show that he had a special fiduciary relationship to them.[28] The record indicates he was a representative of Stewart Title Company, the escrow agent for the parties. Even if the Alsagers could overcome their failure to take the opportunity to read the loan documents, they have left unresolved but necessary elements out of their claim: whether any oral misrepresentations of the notary were as the agent for Washington Federal. Likewise, there is nothing to show that he had either actual or apparent authority to modify the written terms of the loan documents. Thus, these factual disputes over whether there were misrepresentations are not material for purposes of the summary judgment issue before us.
¶ 31 The Alsagers rely upon a decision of the Ninth Circuit Court of Appeals, Grimes v. New Century Mortgage Corporation,[29] for the principle that oral representations regarding loan contracts may be considered in interpreting the loan contract as such representations relate to the meeting of the minds. Their reliance on that case is misplaced.
¶ 32 In Grimes, the borrowers signed loan documents only after the bank's loan officer told them that the interest and monthly payments were incorrectly stated in the loan documents and would be corrected.[30] The majority of a divided panel of the Ninth Circuit held that essential terms of the contract were uncertain because of the loan officer's oral representations.[31] In reaching this conclusion, the majority stated that it had no information as to whether the loan documents excluded the loan officer from altering the terms of the documents.[32] Thus, the majority concluded that the loan officer was either authorized or appeared to be authorized to commit the bank to a different interest rate and monthly payment than stated in the loan documents.[33] For these reasons, the majority concluded there was no meeting of the minds on these essential terms of the contract.[34]
¶ 33 This case is distinguishable. The Alsagers claim that the notary "affirmatively represented to us that the underlying loan was in fact a fixed-rate." But the record is clear that the notary was not a loan officer of this bank with either actual or apparent authority to commit the bank to terms different from those stated in the note and deed of trust. Moreover, there is nothing in this record to show that this notary was an agent for this bank with either actual or apparent authority to modify the written terms of the loan documents. Significantly, as we have already discussed, the Alsagers had no right to rely on any oral representations of the notary, a point of law that the Grimes decision does not discuss. For all of these reasons, that case does not control here.
¶ 34 The Alsagers also argue, in two footnotes, that Washington Federal's practices violate the Washington Consumer Protection Act (WCPA), the Truth in Lending Act (TILA), and the Real Estate Settlement Protection *911 Act (RESPA). But, they cite no case law or persuasive authority to support application of these statutes. As we generally do not consider an issue absent argument and citation to legal authority,[35] we need not address these contentions.
¶ 35 For the first time in their reply, the Alsagers argue that reversal is necessary for several additional reasons. Arguments first raised in a reply brief are not generally addressed.[36] Accordingly, we do not consider them.
¶ 36 We affirm the order on summary judgment and the decree of foreclosure.
WE CONCUR: SPEARMAN and BECKER, JJ.
NOTES
[1] Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, 123 Wash.2d 678, 684, 871 P.2d 146 (1994).
[2] CR 56(c).
[3] Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 279, 937 P.2d 1082 (1997).
[4] Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995).
[5] Khung Thi Lam v. Global Med. Sys., 127 Wash. App. 657, 661 n. 4, 111 P.3d 1258 (2005).
[6] Lynott, 123 Wash.2d at 684, 871 P.2d 146.
[7] Nat'l Bank of Wash. v. Equity Investors, 81 Wash.2d 886, 912, 506 P.2d 20 (1973) (citing Perry v. Cont. Ins. Co., 178 Wash. 24, 33 P.2d 661 (1934)).
[8] Skagit State Bank v. Rasmussen, 109 Wash.2d 377, 381, 745 P.2d 37 (1987).
[9] Id.
[10] King County v. Seawest Inv. Assoc., LLC, 141 Wash.App. 304, 310, 170 P.3d 53 (2007) (citing LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027 (1989)).
[11] See Nat'l Bank, 81 Wash.2d at 912, 506 P.2d 20.
[12] Sea-Van Inv. Assoc. v. Hamilton, 125 Wash.2d 120, 126, 881 P.2d 1035 (1994).
[13] Clerk's Papers at 16.
[14] 109 Wash.2d 377, 745 P.2d 37 (1987).
[15] Id. at 381, 745 P.2d 37.
[16] Id. (emphasis added) (quoting Johnston v. Spokane & I.E.R. Co., 104 Wash. 562, 569, 177 P. 810 (1919)).
[17] Id. at 382, 745 P.2d 37 (emphasis added).
[18] Del Rosario v. Del Rosario, 152 Wash.2d 375, 385, 97 P.3d 11 (2004).
[19] Tjart v. Smith Barney, Inc., 107 Wash.App. 885, 897, 28 P.3d 823 (2001); Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 389, 858 P.2d 245 (1993) (citing Skagit State Bank, 109 Wash.2d at 381-84, 745 P.2d 37).
[20] Pedersen v. Bibioff, 64 Wash.App. 710, 722, 828 P.2d 1113 (1992) (citing Restatement (Second) of Contracts § 163, cmt. c (1979)).
[21] Clerk's Papers at 35.
[22] 137 Wash.2d 683, 974 P.2d 836 (1999).
[23] Id. at 695, 974 P.2d 836 (citing In re Marriage of Schweitzer, 132 Wash.2d 318, 326-27, 937 P.2d 1062 (1997); U.S. Life Credit Life Ins. Co. v. Williams, 129 Wash.2d 565, 569-70, 919 P.2d 594 (1996); Nationwide Mut. Fire Ins. Co. v. Watson, 120 Wash.2d 178, 189, 840 P.2d 851 (1992)).
[24] 115 Wash.2d 657, 801 P.2d 222 (1990).
[25] Id. at 667, 669, 801 P.2d 222.
[26] Save Sea Lawn Acres Ass'n v. Mercer, 140 Wash.App. 411, 418, 166 P.3d 770 (2007) (citing Hollis, 137 Wash.2d at 695, 974 P.2d 836).
[27] See Grimes v. New Century Mortgage Corp., 340 F.3d 1007, 1010 (9th Cir.2003) (holding that reliance on comments by a loan officer was proper as he had either actual or apparent authority to alter the terms of loan).
[28] See Skagit State Bank, 109 Wash.2d at 385, 745 P.2d 37. ("A party generally cannot escape the duty of reading the documents ... in the absence of a showing that ... there was a special relation of trust and confidence in the representing party....").
[29] 340 F.3d 1007 (9th Cir.2003).
[30] Id. at 1009.
[31] Id. at 1010.
[32] Id.
[33] Id.
[34] Id.
[35] State v. Dennison, 115 Wash.2d 609, 629, 801 P.2d 193 (1990); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
[36] Cowiche Canyon Conservancy, 118 Wash.2d at 809, 828 P.2d 549; see RAP 10.3(c).