# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parenting and Support of: | DIVISION ONE |
| A.P., child. | No. 79118-4-I |
| DAVID PARSONS, | UNPUBLISHED OPINION |
| Respondent, | |
| v. | |
| TANYA GOODMAN, | |
| Appellant. | FILED: August 5, 2019 |

DWYER, J. — Tanya Goodman appeals from an order of the superior court denying her motion for revision of a commissioner's order finding her in contempt of court for two violations of a parenting plan. Because she did not violate a court order, Goodman contends, the trial court erred by holding her in contempt of court. Goodman asserts that because her actions violated only arbitration rulings that had not been confirmed by the superior court, she cannot be held in contempt of court for her actions. Finding no error with respect to one order of contempt, we affirm that ruling. We do find error on the second order of contempt; nevertheless, we affirm the trial court's ordered sanctions on other grounds.

I

Tanya Goodman and David Parsons are parents of A.P., born August 7, 2014. The parties were never married nor did they ever live together. For the

two years after A.P.'s birth, Goodman and Parsons had a contentious and combative relationship in their attempt to co-parent A.P. In 2015, recognizing that this parenting situation was untenable, Parsons petitioned the court for a parenting plan. In October 2016, after a four-day bench trial, the court ordered a parenting plan to regulate the relationship between Goodman and Parsons with respect to the raising of A.P. The parenting plan was entered on November 16, 2016.

The parenting plan between Goodman and Parsons details the parties' decision-making ability with respect to A.P., their dispute resolution process, and A.P.'s residential schedule. The plan's residential provision grants Parsons custody of A.P. every Thursday night unless otherwise agreed to by the parties. Following the implementation of the parenting plan, the contentious behavior between Goodman and Parsons continued. On February 17, 2017, the court appointed a parenting coordinator to improve communication between the parties, facilitate dispute resolution, aid interpretation of the parenting plan, and make recommendations to the court regarding potential modifications to the parenting plan.

Soon thereafter, on April 27, 2017, at the parenting coordinator's suggestion, Parsons and Goodman agreed to change the dispute resolution provision of the original parenting plan. The court modified the original parenting plan's dispute resolution provision and appointed an arbitrator to resolve any future disputes that arose between the parties concerning the meaning of the plan. The order appointing an arbitrator states in full:

Section 6.a. of the Final Parenting Plan is hereby amended to read:

*From time to time, the parents may have disagreements about shared decisions or about what parts of this parenting plan mean.*

a. *To resolve disagreements about this parenting plan, the parents will go to the dispute resolution provider below (before they may go to court):*

*Arbitration with Lawrence Besk, Cheryl Russell, or Boyd Buckingham, whoever is first available.*

**Important!** *Unless there is an emergency, the parents must participate in the dispute resolution process listed above in good faith, before going to court. This section does not apply to disagreements about money, support, enforcement of provisions of the parenting plan or modifications of any of its provisions.*

In addition to appointing an arbitrator for dispute resolution, the court decreed that "[t]he Parent Coordinator shall have the authority to establish guidelines related to exchanges of the child and phone calls between the parents and the child."

Following this modification of the plan by the court, over the next year, the arbitrator made five rulings to resolve conflicts between the parties. Though the arbitrator's instructions to the parties stated that "[i]t will be up to the parties and their attorneys to have the arbitrator's award confirmed with the Court," no party sought confirmation of the various arbitration rulings prior to June 2018.

A June 27, 2017 arbitration award implemented a telephone access provision that was agreed to and signed by both parties:

The Parenting Plan is silent on communications between the then non-residential parent and the minor child. It is in the best interest of the minor child to have communication with the then non-residential parent. Such a provision protects both parents from

going for extended periods of time without talking with their son. I am adding to the Parenting Plan the following provision:

> Telephone Access: The child shall have liberal telephone privileges with the parent with whom the child is not then residing without interference of the residential parent. This shall include the minor child calling the other parent, or the other parent calling the minor child. If the parents cannot agree on the definition of "liberal," it shall be defined as one completed telephone call or Facetime per day at reasonable hours and for a reasonable duration. Any calls shall be completed by 8:00 p.m. at the latest. If the residential parent is absent, the calling parent shall leave a message which shall be returned by the child (or the residential parent on behalf of the child) once the child is again available.

Nevertheless, on nine specific instances between July and November 2017, Goodman prevented Parsons from contacting A.P. via Facetime or telephone.

On Thursday May 24, 2018, Goodman picked A.P. up from school on Parsons' residential day to begin her Memorial Day holiday weekend early. Goodman claimed that she was interpreting the school calendar provision of the arbitration award,[1] despite the language of the residential provisions of the parenting plan stating otherwise.

On June 11, 2018, Parsons had five arbitration awards from the previous year confirmed by the superior court, including the June 27, 2017 award, which contained the telephone access provision. On June 26, 2018, Parsons filed a motion in court, seeking to enforce the parenting plan and arbitration awards, by obtaining a ruling that Goodman was in contempt of court for (1) picking up A.P.

---

[1] The arbitrator's award at issue states: "I am clarifying section 10 of the Parenting Plan to provide that the Monday holidays include the prior weekend. The holiday shall begin after school on Friday and end with the return of the child to school after the Monday holiday."

from school on May 24, 2018 during Parsons' residential time and keeping A.P. overnight, and (2) for her continued violations of the of the telephone access provision.

A contempt hearing was held before a family law commissioner on July 12, 2018. At the hearing, the commissioner entertained testimony from both parties and reviewed evidence including the parenting plan, the arbitration awards, e-mails, and text messages exchanged between the parties. The commissioner found Goodman in contempt of the parenting plan for "willfully and in bad faith" withholding A.P. from Parsons on the May 24, 2018 overnight stay in violation of the November 16, 2016 parenting plan, and for failing to comply with the telephone access provision established by the June 27, 2017 arbitration ruling. The commissioner ordered that Goodman pay a civil penalty ($100), attorney fees ($3,968.75), and costs ($200), in addition to ordering that Goodman provide Parsons "one overnight (24 hours) at Petitioners' discretion with 7 days['] notice."

Following the commissioner's ruling, Goodman filed a motion in the superior court for revision of the commissioner's order. At the hearing before a superior court judge on September 21, 2018, the court denied Goodman's motion for revision and ordered her in contempt for withholding A.P. from Parsons during his residential overnight on May 24, 2018, and for failing to honor the telephone access provision on nine occasions. The court did not order an award of fees for the revision hearing. Goodman now appeals from the superior court's order.

II

Goodman avers that the superior court commissioner erred by issuing two orders of contempt of court against her based on two violations of unconfirmed arbitration rulings. This is so, she asserts, because individuals may only be ordered in contempt for violating court orders, and an unconfirmed arbitration award is not an order of the court for the purposes of contempt. Goodman's argument that a contempt finding requires an underlying court order and an unconfirmed arbitration award is not a court order is a correct interpretation of the law. The trial court did err by finding Goodman in contempt for violating the telephone access provision of the June 27, 2017 unconfirmed arbitration award. However, the sanctions imposed by the trial court are authorized by another applicable statute. Further, Goodman's argument that the trial court erred by finding her in contempt with respect to the May 24, 2018 overnight visit is without merit

A

Goodman and Parsons agree that the trial court's order finding Goodman in contempt of court is controlled by RCW 7.21.010. Thus, we must first consider whether an underlying court order is required in order to find a party in contempt of court. We conclude that it is.

The relevant statute provides:

> (1) "Contempt of court" means intentional:
> . . .
> (b) Disobedience of any lawful judgement, decree, order, or process of the court.

RCW 7.21.010.

Parsons contends that RCW 7.21.010 does not explicitly require violation of a court order for the court to find a party in contempt. This is so, he asserts, because arbitration in this case was court ordered and, thus, the arbitration functioned as a "process of the court" within the definition of RCW 7.21.010(b). Parsons's interpretation of RCW 7.21.010 is wrong.

We review the meaning of a statute de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, we must discern and implement the intent of the legislature. Johnson v. Recreational Equip., Inc., 159 Wn. App. 939, 946, 247 P.3d 18 (2011) (citing Campbell & Gwinn, 146 Wn.2d at 9). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Campbell & Gwinn, 146 Wn.2d at 9-10. We discern the plain meaning of the statute is from the ordinary meaning of the language, the context of the statute, its related provisions, and the statutory scheme as a whole. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

Parsons bases his argument on his interpretation of the word "process." Based on his broad reading of the statute, Parsons seemingly defines "process" as "something (as a series of actions, happenings, or experiences) going on or carried on." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1808 (2002). However, we must construe statutes as a whole, endeavoring to give effect to all the language therein. Rayner v. Neff, 110 Wn. App. 860, 863, 43 P.3d 35 (2002) (citing City of Seattle v. Fontanilla, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996)).

As stated above, RCW 7.21.010 provides: "(1) 'Contempt of court' means intentional: . . . (b) Disobedience of any lawful judgment, decree, order, or process of the court." Based on a construction that gives meaning to all of its terms, it is plain that "lawful" modifies "judgment, decree, order" as well as "process." "Lawful process" of the court does not refer to any action or result that proceeds from a court order. Rather, "process" has a very specific definition in this context. Black's Law Dictionary defines "process" as:

> **process** *n.* (14c) **1.** The proceedings in any action or prosecution <due process of law>. **2.** A summons or writ, esp. to appear or respond in court <service of process>. — Also termed *judicial process; legal process.*
> . . . .
> legal process. (17c) Process validly issued. — Also termed *lawful process.*

BLACK'S LAW DICTIONARY 1399 (10th ed. 2014).

There are countless examples of this use of "process" being employed by the legislature and by the courts. See, e.g., CR 4 (process); Cito v. Rios, 3 Wn. App. 2d 748, 418 P.3d 811, review denied, 191 Wn.2d 1017 (2018) (service of process).[2]

The legislative context of RCW 7.21.010 confirms the legislative intent that "process" in this context refers to legal process. As used in the statute, "lawful" is an adjective that modifies four nouns: "judgment," "decree," "order," and "process." A less concise phrasing of this statute would be: "lawful judgment of

---

[2] Notably, there is no Washington case law in which contempt orders have resulted from the violation of arbitration awards, not confirmed by the court. There are cases in which *confirmed* arbitration awards served as the basis for a contempt of court ruling. See Cohen v. Graham, 44 Wn. App. 712, 715, 722 P.2d 1388 (1986).

the court, lawful decree of the court, lawful order of the court, or lawful process of the court."

Thus, contempt can only be found, based on this subsection, when there is a violation of an underlying order or official decree of the court. Arbitration is by definition an alternative to the judicial process and an arbitration forum is not a court. Grays Harbor County v. Williamson, 96 Wn.2d 147, 153, 634 P.2d 296 (1981).

B

The first order of contempt at issue is based on Goodman's actions on Thursday, May 24, 2018 when she picked A.P. up from school on Parsons' residential day. Here, the court did not err by finding Goodman in contempt because her actions clearly violated a residential provision of the court-ordered parenting plan. Thus, a court order was violated.

Goodman avers that her disagreement with Parsons regarding the May 24, 2018 residential schedule took place before pertinent arbitration decisions were confirmed by the court in June 2018 and, thus, she did not violate a court order. As to this contempt finding, this argument fails because Goodman's actions on May 24, 2018 clearly violated a residential provision contained in the original parenting plan entered by the court on November 16, 2016. Goodman's assertion that her actions occurred prior to the court's confirmation of controlling arbitration awards is correct, yet irrelevant with respect to this contempt finding.

We review a trial court's decision to hold a party in contempt for abuse of judicial discretion and uphold the trial court's contempt finding if a proper basis

for contempt can be found. Dep't of Ecology v. Tiger Oil Corp., 166 Wn. App. 720, 768, 271 P.3d 331 (2012) (citing Stella Sales, Inc. v. Johnson, 97 Wn. App. 11, 20, 985 P.2d 391 (1999)).

A parenting plan is an order of the court. RCW 26.09.004(3). The interpretation of a parenting plan is a question of law. Kirshenbaum v. Kirshenbaum, 84 Wn. App. 798, 803, 929 P.2d 1204 (1997). Residential Provision 8(b) of the November 16, 2016 parenting plan plainly states that Parsons is to have custody of A.P. every Thursday overnight unless there is a prior agreement to the contrary. Goodman picked up A.P. early from school on Thursday, May 24 2018, and withheld him overnight from Parsons in clear violation of the court-ordered parenting plan.

Substantial evidence supports the trial court's finding that Goodman violated, in bad faith, the court-ordered parenting plan establishing residential provisions for A.P. The trial court credibly found that given the case's litigious history and the fact that Goodman failed to communicate with Parsons after picking up A.P. from school on Parsons' residential day, Goodman violated the plain language of the residential provision of the parenting plan in bad faith.

Thus, the trial court did not abuse its discretion by finding Goodman in contempt of court for the violation of a residential provision of the original parenting plan that was entered with the court on November 16, 2016.

C

The second order of contempt is based on the nine instances between July and November 2017 when Goodman prevented Parsons from contacting

- 10 -

A.P. via Facetime. Here, the court erred by finding Goodman in contempt because Goodman merely violated arbitration rulings that were unconfirmed by the court. This falls outside the court's power to find a party in contempt.

When a contempt ruling is based on an incorrect view of the law or an incorrect legal analysis, it is an abuse of judicial discretion and we must reverse the trial court's finding of contempt. In re Estates of Smaldino, 151 Wn. App. 356, 364, 212 P.3d 579 (2009). As discussed herein, in order for the court to hold a party in contempt there must be an underlying court order. In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). The law is clear that an unconfirmed arbitration award is not enforceable as a court order until it is confirmed by the court. RCW 7.04A.250(1); Grays Harbor, 96 Wn.2d at 153.

Here, Goodman's actions that formed the basis of the court's contempt order for violating the telephone access provision occurred from July through November 2017 and, thus, occurred prior to the court's confirmation of the award containing that provision, which took place on June 11, 2018. Thus there was no underlying court order upon which the court could base a contempt finding. This was, thus, an untenable ground on which to find Goodman to be in contempt of court. The finding of contempt was improper as to these allegations.

III

Respondent cites to, but does not urge as controlling, the provisions of chapter 26.09 RCW. We believe that these motions should have been brought pursuant to this chapter and that it supports the various remedies imposed.

Though neither party contends that chapter 26.09 RCW controls the imposition of sanctions here, this chapter is material to resolving the issues presented. The chapter authorizes contempt proceedings for the purpose of coercing compliance with a parenting plan including its residential provisions. RCW 26.09.160(2)(a). Contempt in this context is civil rather than criminal. Thus, it is remedial and purgeable upon a party achieving compliance with the court order. RCW 26.09.160.

In addition, courts are authorized by RCW 26.06.160 to sanction parents for parenting plan violations and authorized under RCW 26.09.184(4) to sanction parents for frustrating the dispute resolution process of a parenting plan, which includes arbitration.

A

RCW 26.09.160 provides the applicable contempt statute concerning Goodman's withholding of A.P. from the May 24, 2018 overnight stay. Courts are authorized under RCW 26.09.160 to sanction a parent for parenting plan violations and "[f]ailure to comply with a provision in a parenting plan or a child support order may result in a finding of contempt of court, under RCW 26.09.160." RCW 26.09.184(7). Indeed, a parent may be held in contempt for the violation of a residential provision in a parenting plan. RCW 26.09.160 provides:

> (2)(a) A motion may be filed to initiate a contempt action to coerce a parent to comply with an order establishing residential provisions for a child. If the court finds there is reasonable cause to believe the parent has not complied with the order, the court may issue an order to show cause why the relief requested should not be granted.

(b) If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court. Upon a finding of contempt, the court shall order:

(i) The noncomplying parent to provide the moving party additional time with the child. The additional time shall be equal to the time missed with the child, due to the parent's noncompliance;

(ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the noncompliance, and any reasonable expenses incurred in locating or returning a child; and

(iii) The parent to pay, to the moving party, a civil penalty, not less than the sum of one hundred dollars.

. . . .

(6) Subsections (1), (2), and (3) of this section authorize the exercise of the court's power to impose remedial sanctions for contempt of court and is in addition to any other contempt power the court may possess.

As discussed herein, the trial court credibly found that Goodman had violated the residential provision of the court-ordered parenting plan. Thus, the trial court properly acted within the statutory authority of RCW 26.09.160(2) by finding Goodman in contempt of court for this violation.

B

RCW 26.09.184(4) also authorizes the imposition of the monetary sanctions imposed on Goodman by the trial court for violating the telephone access provision of the June 27, 2017 arbitration ruling.[3] Courts are authorized under RCW 26.09.184(4)(d) to impose monetary sanctions for "frustrat[ing] the dispute resolution process" of a parenting plan, "without good reason." The dispute resolution process includes arbitration. We conclude that intentionally

---

[3] Although respondent does not cite to this provision in defense of the superior court's ruling, we may affirm the trial court on any ground supported by the record. Wash. Fed. Sav. & Loan Ass'n v. Alsager, 165 Wn. App. 10, 14, 266 P.3d, 905 (2011).

- 13 -

violating arbitration rulings can constitute the frustration of the arbitration process and, thus, be economically sanctionable.

RCW 26.09.184(4)(b) establishes a process by which the parties to a parenting plan may resort to arbitration to "resolve disputes relating to the implementation of the plan." "The court's authority to mandate arbitration of disputes about the implementation of parenting plans derives solely from [former] RCW 26.09.184(3)." In re Parentage of Smith-Bartlett, 95 Wn. App. 633, 637-38, 976 P.2d 173 (1999). The relevant statute provides:

> (4) DISPUTE RESOLUTION. A process for resolving disputes, other than court action, shall be provided unless precluded or limited by RCW 26.09.187 or 26.09.191. A dispute resolution process may include counseling, mediation, or arbitration by a specified individual or agency, or court action. In the dispute resolution process:
>
> . . .
> (c) A written record shall be prepared of any agreement reached in counseling or mediation and of each arbitration award and shall be provided to each party;
> (d) If the court finds that a parent has used or frustrated the dispute resolution process without good reason, the court shall award attorneys' fees and financial sanctions to the prevailing parent.

RCW 26.09.184(4).

Here, a "written record" of the award at issue was provided to each party. Thus, Goodman's non-compliance with the arbitration ruling was a sanctionable offense pursuant to RCW 26.09.184(4)(d). Based on the facts in the record and the finding of the trial court judge, Goodman clearly violated the arbitrator's award in bad faith. Accordingly, an award of attorney fees and financial sanctions were appropriately imposed. Though a contempt finding was

- 14 -

improper, the sanctions imposed were proper pursuant to RCW 26.09.184(4)(d) for frustration of the dispute resolution process.

IV

Goodman contends that, because (in her view) the contempt of court orders were based on untenable grounds, we should vacate the trial court's award of attorney fees and other sanctions against her. To the contrary, the sanctions imposed by the superior court were authorized by controlling statutes.

The commissioner ordered that, as sanctions, Goodman pay a civil penalty ($100), attorney fees ($3,968.75), and costs ($200). It was also ordered that Goodman provide Parsons an overnight (24 hours) at his discretion with seven days' notice.

We affirm the overnight sanction as restitution for a valid order of contempt under RCW 26.09.160(2)(b). We affirm the attorney fees and financial sanctions as they fall within the statutorily applicable sanctions for frustrating the dispute resolution process under RCW 26.09.184(4)(d) and as sanctions for the finding of contempt regarding the Thursday overnight.

With respect to Goodman's violation of the residential schedule on May 24, 2018, RCW 26.09.160(2) authorizes the following statutory sanctions:

> (b) If, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child, the court shall find the parent in contempt of court. Upon a finding of contempt, the court shall order:
> (i) The noncomplying parent to provide the moving party additional time with the child. The additional time shall be equal to the time missed with the child, due to the parent's noncompliance;
> (ii) The parent to pay, to the moving party, all court costs and reasonable attorneys' fees incurred as a result of the

- 15 -

noncompliance, and any reasonable expenses incurred in locating or returning a child; and

(iii) The parent to pay, to the moving party, a civil penalty, not less than the sum of one hundred dollars.

Regarding Goodman's violation of the arbitration decision that established the telephone access provision, RCW 26.09.184(4)(d) authorizes the trial court to "award attorneys' fees and financial sanctions" if it finds that a parent has "frustrated the dispute resolution process without good reason."

The sanctions that the trial court imposed on Goodman, a civil penalty, attorney fees, costs, and an overnight visit for the child with Parsons, are within the applicable statutory sanctions provided based on Goodman's violation of a residential provision of the parenting plan and her frustration of the dispute resolution process established by the parenting plan.

Thus, we affirm the civil penalty ($100), attorney fee award ($3,968.75), assessed costs ($200), and the overnight granted to Parsons.

V

Goodman requests an award of appellate attorney fees and costs pursuant to RAP 18.1. Parsons, likewise, requests that the court award him costs and fees.

RAP 18.1 allows this court to award attorney fees on appeal if applicable law provides for an award of fees. Only Parsons cites to the applicable law herein, RCW 26.09.140, which states that "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." Because we conclude that Parsons is the substantially prevailing party, we award

fees and costs to Parsons under RCW 26.09.140 and RAP 18.1. Goodman's request for an award of fees is denied.

Upon proper application, a commissioner of our court will enter an appropriate order.

VI

The first finding of contempt is affirmed. The imposition of all sanctions is affirmed.

Affirmed.

WE CONCUR: