# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LAFAWNDA WILLIAMS,<br><br>     Appellant,<br><br>     v.<br><br>MATTHEW McCANDLIS, and JANE DOE McCANDLIS, husband and wife and the marital community composed thereof,<br><br>     Respondent. | DIVISION ONE<br><br>No. 79058-7-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — LaFawnda Williams appeals from the dismissal of her suit against Matthew McCandlis. Because Williams failed to serve McCandlis with a copy of the summons and complaint within either the applicable statutory limitation period or the 90-day tolling period allotted for service of process, her complaint is time-barred. Accordingly, we affirm.

I

On September 23, 2014, Matthew McCandlis was driving a vehicle that collided with a vehicle driven by LaFawnda Williams. Nearly three years later, on September 18, 2017, Williams filed a complaint in superior court, alleging that negligence on the part of McCandlis caused injuries to her, and seeking damages.

While the statutory limitation period for negligence actions is three years, pursuant to RCW 4.16.080(2), both parties acknowledged that Williams's filing of the complaint tolled the statutory limitation period to allow Williams to accomplish service of process on McCandlis within 90 days.

To effect such service, Williams hired Andy Willms. Although Willms had some experience with serving documents, and although he was aware of licensing requirements applicable to process servers, he was never himself licensed. After searching for information about McCandlis on Facebook, Willms set out to attempt service. The only information he had concerning McCandlis was a description of the vehicle he had been driving at the time of the 2014 collision—a Lincoln of unknown model and color—and a "vague physical description" of McCandlis, along with his address.

Willms proceeded to the address identified as McCandlis's residence, the Ellington Condominiums (Ellington) in Seattle. Although the building was locked, Willms somehow gained entry into the lobby. In his words, he "stopped at that desk countertop there, you know, and explained I was there to serve process—or legal documents and was told I couldn't go any further without permission."

Thus, Willms modified his tactics. Over the next several days, he returned to the address several times, surveilled the building from a location outside and, "when males would come out, [he] would call out 'Matt' or 'Matthew' and try to elicit a response to him to no avail." He also "spent about twenty-five percent of this time watching the garage and looking" for a vehicle that matched the description of McCandlis's from the time of the 2014 collision.

2

Eventually, on September 29, Willms determined that his "odds of handing the defendant papers were not good" and again gained entry into the building. Inside, he saw a person "sitting and milling around" the concierge desk. Willms approached this desk and handed a manila envelope with one set of documents to this person, "a female." Willms said, "what—who [the documents] were for and [that he] was leaving them here and kind of skedaddled." He did not seek the name, position, age, or any other information to identify this woman and did not take any photograph to document the attempted service. He later stated that the woman's affiliation with the condominium complex "was apparent to me by them being inside there."

On May 16, 2018, McCandlis filed a motion for summary judgment seeking dismissal of the complaint, pursuant to CR 12(b)(2), claiming that the superior court lacked personal jurisdiction over him. The basis for this claim was that Williams failed to perfect service on him within 90 days of filing the complaint. McCandlis sought dismissal with prejudice because the claim was now barred by the expiration of the statutory limitation period.

In response, Williams asserted that a factual dispute existed, claiming that she had perfected service. Her response was supported by Willms's declaration, which stated as follows:

> On September 29, 2017, I put two copies of the summons and complaint in a manila envelope addressed to Defendant at at [sic] 2801 1st Avenue, Seattle, Washington 98121. I put two more copies of the summons and complaint into a second envelope addressed to Defendant at the same address, with United States Postal Service first class postage prepaid. I then entered the lobby and left the envelope that lacked postage with a person at the

3

concierge desk. I deposited the second envelope deposited in a USPS mailbox.

After Williams filed her opposition to the motion for summary judgment, McCandlis struck the motion and arranged to depose Willms. The deposition took place on July 31, 2018. McCandlis then filed a new motion for summary judgment, stating:

> Defendant seeks summary judgment and dismissal of Plaintiff's claims. In the alternative, Defendant requests an evidentiary hearing to evaluate the credibility of Plaintiff's sole fact witness supporting her claim that she served Mr. McCandlis.

The court denied the motion for summary judgment but granted the alternative remedy of an evidentiary hearing on the CR 12(b)(2) defense. This hearing took place on September 14, 2018, and featured testimony from Willms and from Ellington's operations manager, Suzanne Spalding. Spalding denied ever accepting service of legal documents and, when asked what she would do if she was asked to, stated:

> First of all, we don't allow entrance for service of legal documents. And if I was given something, I would just hand it back to them and tell them that it's not allowed.

Spalding also explained that the building had two recording systems in place—a digital service called "Easy Track" and a manual log of delivered packages—and testified that neither of these record systems indicated any delivery for McCandlis having been made on September 29, 2017.

After this hearing, the court dismissed Williams's suit.[1] She appeals.

---

[1] In his appellate brief, McCandlis refers to this dismissal as a grant of summary judgment. To the contrary, the record indicates that summary judgment was denied, resulting in the evidentiary hearing.

4

II

A

The trial court ruled after engaging in a fact-finding hearing. On appeal, our review is limited to determining whether the trial court's factual findings are supported by substantial evidence and whether those findings support the trial court's conclusions of law. Standing Rock Homeowners Ass'n v. Misich, 106 Wn. App. 231, 242-43, 23 P.3d 520 (2001). Substantial evidence is a "quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). On review, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the prevailing party. Korst v. McMahon, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006). Although the trier of fact is free to believe or disbelieve any evidence presented at trial, "[a]ppellate courts do not hear or weigh evidence, find facts, or substitute their opinions for those of the trier-of-fact." Quinn v. Cherry Lane Auto Plaza, Inc., 153 Wn. App. 710, 717, 225 P.3d 266 (2009) (citing Thorndike v. Hesperian Orchards, Inc., 54 Wn.2d 570, 572, 343 P.2d 183 (1959)). Unchallenged findings of fact are treated as verities on appeal. Rush v. Blackburn, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).

"Proper service of the summons and complaint is a prerequisite to a court's obtaining jurisdiction over a party." Harvey v. Obermeit, 163 Wn. App. 311, 318, 261 P.3d 671 (2011). "When a defendant challenges service of process, the plaintiff has the initial burden of proof to establish a prima facie case of proper service." Northwick v. Long, 192 Wn. App. 256, 261, 364 P.3d 1067

(2015). The plaintiff may do this with the declaration of a process server that is "regular in form and substance." Northwick, 192 Wn. App. at 261. The defendant must then show by clear and convincing evidence that service was improper. Northwick, 192 Wn. App. at 261.

RCW 4.28.080(16) authorizes a plaintiff to serve a defendant personally or by leaving a copy of the summons at the defendant's usual abode with a "person of suitable age and discretion" who resides therein. RCW 4.28.080(17) provides:

> In lieu of service under subsection (16) of this section, where the person cannot with reasonable diligence be served as described, the summons may be served as provided in this subsection, and shall be deemed complete on the tenth day after the required mailing: By leaving a copy at his or her usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof, and by thereafter mailing a copy by first-class mail, postage prepaid, to the person to be served at his or her usual mailing address. For the purposes of this subsection, "usual mailing address" does not include a United States postal service post office box or the person's place of employment.

While our courts mandate only substantial compliance with personal service statutes, we require strict compliance when a statute authorizes constructive or substituted service. Martin v. Triol, 121 Wn.2d 135, 144, 847 P.2d 471 (1993).

B

Williams assigns error to the following findings of fact:

> 6. Mr. Willms could not recall when he attempted to effect service on Mr. McCandlis: "I do not have that in my memory, sir, no, it was August—September, October, August, or a three-month period there in 2017."

6

. . . .

13. Mr. Willms observed the person he left the envelope with to be "milling around[,]" "sitting and milling around" the concierge desk.

14. Mr. Willms put an envelope addressed to Mr. McCandlis with the second copy of the Summons and Complaint in the US Mail.

. . . .

22. Ms. Spalding testified that she was working on September 29, 2017, and covered the concierge desk from 8 a.m. until 4 p.m. No documents were delivered for the Defendant on September 29, 2017. If a document was delivered for Defendant while she was away from the concierge desk, it would have been recorded in the Easy Track system. The Easy Track system contained no evidence that a package was delivered for the Defendant on September 27, 2017.

Each of these findings is supported by substantial evidence. In fact, the evidence supporting Findings of Fact 6, 13, and 14 is the testimony of Willms himself. While Williams challenges these findings of fact, she does not point us to anything in the record that would tend to negate this testimony. Nor has she directed us to any authority that would require the trial court to reject Willms's testimony. When a party fails to cite authority to support a proposition, "the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Substantial evidence—namely, Spalding's testimony—also supports Finding of Fact 22. Again, Williams points us neither to evidence nor authority that would tend to negate it. In fact, as Williams states in her own appellate brief,

> [d]efendants [sic] noted that the EasyTrack system has not been purged, and that no information been removed from that system since 2017, having received and tracked almost 46,000 packages being logged in those three years. RP page # 24. [ ]The EasyTrack software is used to track the receipt of deliveries for building residents. It also sends email to building residents.

Br. of Appellant at 14.

Williams's argument otherwise rests on attacking Spalding's credibility as a witness. Again, when "'a trial court finds that evidence is insufficient to persuade it that something occurred, an appellate court is simply not permitted to reweigh the evidence and come to a contrary finding.'" Bale v. Allison, 173 Wn. App. 435, 458, 294 P.3d 789 (2013) (italicization omitted) (quoting Quinn, 153 Wn. App. at 717). We decline Williams's invitation to do so.

Because Williams has not challenged any of the trial court's other findings of fact, we deem them verities. Rush, 190 Wn. App. at 956.

C

Williams, next, assigns error to the following conclusions of law:

> 2. Nor was service of process effected pursuant to RCW 4.16.080(17), which allows service by leaving a copy of the Summons and Complaint at the Defendants' usual mailing address with a person of suitable age and discretion who is a resident, proprietor, or agent thereof.

> 3. The record fails to establish the location of Defendants' usual mailing address.

> 4. While Plaintiff's process server testified that he left a copy of the Summons and Complaint with a female who was "milling about" the concierge desk of a location he believed to be Defendants' usual mailing address, the record is void of any facts establishing the identity of that woman, let alone that she was a resident, proprietor, or agent thereof, as specifically required under RCW 4.16.080(17).

8

5. Plaintiff's process server was unable to establish whether the woman he left the Summons and Complaint with was someone he had seen behind the concierge desk before.

6. Plaintiff has failed to establish the identity of the individual with whom the process was left, either by name or with a business card from the concierge desk.

7. The record lacks evidence supporting the conclusion that the individual to whom the process was delivered was a resident, proprietor, or agent of the location where Defendant maintained his usual mailing address.

. . . .

9. Plaintiff failed to properly serve the Defendants within the statute of limitations and this Court therefore lacks jurisdiction over the matter.

Pursuant to the above Findings of Fact and Conclusions of Law, it is hereby ORDERED that Plaintiff's claims in this matter are dismissed with prejudice.

Williams's principal argument is that Willms, in fact, perfected service as required by RCW 4.28.080(17).[2]  She argues, first, that the record shows McCandlis's "usual mailing address" was the same as the address of his abode, and, second, that the record shows Willms left a copy of the summons and complaint with a person of suitable age and discretion who was a resident, proprietor, or agent thereof.  In support of the contention that McCandlis's usual mailing address was his place of abode, she states:

> First, Mr. McCandlis submitted a declaration stating that he had lived at the Ellington for seventeen years.  CP page # 66.  Second, his name appears in the directory on the intercom.  CP page # 20. Third, given the complexity and high end level of service [at the building], it is hard to imagine a more convenient place for delivery of his mail.  Fourth, if the mailing address used was not his usual mailing address, the mailing would have been returned to the

---

[2] Williams concedes that she did not achieve service on McCandlis pursuant to RCW 4.28.080(16).  Br. of Appellant at 10.

> sender by the United States Post Office [sic], and no such return was received.  Fifth, the statute (RCW 4.28.080(17)) specifically excludes from the definition of "usual mailing address" the address of his place of employment.  Sixth, the statute specifically excludes a United States postal service post office box.  Seventh, the Easy Tack system for managing communications through emails seems to be heavily relied upon by the concierge staff.

Br. of Appellant at 13-14.

None of these assertions constitute evidence that McCandlis's residential address was, indeed, his usual mailing address.  The parties do not dispute that Ellington was McCandlis's place of abode.  But this did not require the trial court to find as a fact that it was also the place where he received mail.  The notion that McCandlis *should* receive mail at his place of abode because it would be "convenient," is an inference that could be drawn from the evidence.  But the trial court did not draw this inference.  Nor was it required to.  We defer to the trial court on its determinations as to disputed facts.

There is also no support for Williams's assertion that the summons and complaint would have been returned to the sender if the address was not McCandlis's usual mailing address.  Were this true, it would be impossible for anyone to maintain more than one mailing address, making the legislature's inclusion of the word "usual" in RCW 4.28.080(17) mere surplusage.  We avoid interpretations of a statute that render superfluous a provision thereof.  In re Estate of Mower, 193 Wn. App. 706, 720, 374 P.3d 180 (2016) (quoting Veit v. Burlington N. Santa Fe Corp., 171 Wn.2d 88, 113, 249 P.3d 607 (2011)).  More to the point, the trial court was not required to view the evidence in the manner urged by Williams.  And it plainly did not.

10

Finally, Williams attempts to argue that the address *must* be McCandlis's usual mailing address by process of elimination, because the statute excludes United States Postal Service post office boxes and places of employment from the definition of a "usual mailing address." Contrary to this assertion, there are other locations that may serve as a "usual mailing address." Thus, in Wright v. B&L Properties, Inc., 113 Wn. App. 450, 460, 53 P.3d 1041 (2002), we ruled that a private mailbox was a party's "usual mailing address," while in Sheldon v. Fettig, 129 Wn.2d 601, 612, 919 P.2d 1209 (1996), the Supreme Court ruled that the home of a defendant's parents was the defendant's "usual mailing address," notwithstanding her having moved to an apartment in another state eight months before service was attempted. "'[I]n a highly mobile society it is unrealistic to interpret [the substitute service statute] as mandating service at only one location where, in fact, a defendant maintains several dwelling places.'" Sheldon, 129 Wn.2d at 611 (alterations in original) (quoting Karlin v. Avis, 326 F. Supp. 1325, 1329 (E.D.N.Y. 1971)). And, again, and more to the point, the trial court was not required to draw from this evidence the inferences favored by Williams. It is apparent that it did not.

The trial court's findings of fact are either supported by substantial evidence, verities on appeal, or both.[3]

Conclusions of Law 4 through 7 are also supported by the record. The record is devoid of any information identifying the person with whom Willms

---

[3] Williams does not explain her assertion that the existence and employment of the Easy Track package tracking system necessarily means that McCandlis's usual mailing address was at Ellington.

claimed to have left a copy of the summons and complaint—let alone that this individual was a resident, proprietor, or agent of Ellington. Willms testified only that the person was "a female" who "appeared to be over 18 years of age to me" and was "[s]itting and milling around" the concierge desk. This evidence did not mandate a conclusion that the person milling around the concierge desk was a resident, proprietor, or agent of the property.

During the evidentiary hearing, Willms testified that he did nothing to determine the identity of the person with whom he left the envelope. Willms did not take a photograph of the person or receive a business card with the person's information on it before he "skedaddled."

> Q: You testified earlier you didn't take a business card from anyone when you claim you attempted service in this case?
> A: That is correct.

Willms also did not ask for the person's name:

> Q: You didn't get the name of the person you claim you spoke to?
> A: No, sir, I did not.

Nor did Willms ask this individual as to her title or position at Ellington:

> Q: You didn't get a title for that person?
> A: No, sir, I did not.

Finally, he did not ask for, receive, or produce any sort of receipt or documentation that would show the documents were in fact delivered:

> Q: You didn't get any kind of receipt to indicate you dropped off the claimed service documents in this case?
> A: No, sir, I did not.

Based on the witnesses' testimony and the other evidence adduced, the trial court concluded that there was insufficient evidence to establish that the

person with whom Willms left the envelope was a resident, proprietor, or agent of

Ellington:

> [W]e have a complete gap in this record that whoever that person
> was was a resident, or a proprietor, or an agent of the defendant's
> usual mailing address.

The court also took note that the individual was not identified at all:

> His testimony is that he left them on the countertop with a female
> there. He does not know anything about who this female is. He
> doesn't identify this as somebody that he had seen behind the
> concierge desk before. He doesn't identify that person with a
> name, which apparently he didn't get, or with a business card,
> although apparently Ms. Spalding has her business card right there
> on the concierge desk. And most importantly, for my purposes, he
> really cannot tell me anything to establish that that person that he
> allegedly left these papers with was a resident of this building, a
> proprietor of this building, or an agent thereof. The statute requires
> that the person at the usual mailing address—and we'll just assume
> for a moment this is the defendant's usual mailing address—has to
> be a resident, a proprietor, or an agent thereof.

Williams argues, on appeal, that "[t]here is no reason that someone would

be behind that desk, that must have a huge traffic in information and tasks,

unless they were working there." Br. of Appellant at 13. Again, Williams is

attempting to argue the facts on appeal. And, again, the trial court was not

required to draw the inference favored by Williams.

We turn to the trial court's final conclusion of law—stating that "Plaintiff

failed to properly serve the Defendants within the statute of limitations and this

Court therefore lacks jurisdiction over the matter." While the wording of this

conclusion is imprecise, we may affirm on any ground supported by the record.

Wash. Fed. Sav. & Loan Ass'n v. Alsager, 165 Wn. App. 10, 14, 266 P.3d 905

(2011). Plainly, the superior court had jurisdiction over the *subject matter*, as

provided by article IV, section 6 of Washington's constitution.  It is only jurisdiction over the defendant that is conditioned on proper service of the summons and complaint.  Harvey, 163 Wn. App. at 318.  Moreover, it was not Williams's failure to serve McCandlis within the statute of limitations that necessitates dismissal of her complaint—it was her failure to serve process within the applicable statutory limitation period, as provided in RCW 4.16.080(2), *and* the applicable 90-day tolling period, as provided in RCW 4.16.170.

Nevertheless, the trial court reached the correct result in dismissing the complaint with prejudice.

Affirmed.

WE CONCUR: