[No. 442-2.　Division Two.　October 28, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN JAMES FITZPATRICK, *Appellant.*

*Robert G. Kerr,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney, Joseph D. Mladinov, Special Counsel,* and *Eugene G. Olson, Chief Criminal Deputy,* for respondent.

ARMSTRONG, J.—Defendant appeals from a conviction and sentence of unlawful possession of the dangerous drug marijuana with intent to sell. The case was tried to the court without a jury on stipulated facts and the testimony of the defendant.

Two issues are presented: (1) Does the definition of sale contained in the Uniform Narcotic Drug Act in RCW 69.33.220, section 10, apply to RCW 69.40.070 of the dangerous drug act? We hold that it does not. (2) Did the stipulated facts, testimony and the court's finding that defendant had been hired to transport a large quantity of marijuana across the Canadian border justify a convic-

tion for possession of the dangerous drug marijuana with intent to sell it? We hold that they do not.

The stipulated facts established that on September 1, 1970, pursuant to information received from Canadian authorities, the Pierce County sheriff's office apprehended a small airplane from Canada at a Spanaway airport. They received permission from the defendant to search the airplane. Inside the airplane they found two postal bags containing 76 bricks or packages of marijuana and three empty suitcases with marijuana residue in them. Defendant told them that he had received the marijuana from a person driving a yellow pickup truck. Defendant stated that he was to fly the marijuana over the border and drop it for later pickup.

Defendant testified that he was 27 years old and lived in North Vancouver, B.C. He worked in the woods as a logger and had never been convicted of a crime. He had received two traffic tickets. He had been out of work for 4 months out of the past 8 and needed money because a collection agency was threatening him. He was offered $1,000 by two fellow loggers to fly to Pierce County, pick up some marijuana and deliver it to them in Canada. He named the people with whom has had made the deal but the court's finding referred to a delivery to person or persons unknown. He stated that he had never sold any narcotics and did not know what they were going to do with the marijuana. He also stated that he had no intention to sell the marijuana. He was merely to drop it off at a point in Canada, thereby fulfilling his side of the bargain.

The court entered findings of fact and conclusions of law upon the stipulation and the testimony. They are set forth in the margin.[1]

---

[1]
"FINDINGS OF FACT
"I
"The stipulated facts which were submitted to the Court and which are attached hereto and made a part hereof are found to be correct;
"II
"The defendant admitted in open court under direct examination

The state contends and the trial court held that the definition of "sale" contained in section 69.33.220 of the Uniform Narcotic Drug Act applies to a charge of possession of the dangerous drug marijuana with intent to sell. We cannot agree.

The Uniform Narcotic Drug Act construes the word "sale" in a broad sense, giving it a meaning that is much wider than it is normally given in the context of commercial law. Section 69.33.220(10) provides:

"Sale" includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee.

It has been determined that marijuana is a dangerous drug and is not a narcotic drug. *State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970). We are setting forth the portions of the dangerous drug act which are specifically applicable to this case:

RCW 69.40.060 (2) provides in part:

It shall be unlawful for a person, firm or corporation to sell, give away, barter, exchange or distribute any part of the plant Cannabis Sativa L., commonly known as marihuana, . . .

RCW 69.40.070 provides in part:

Whoever violates any provision of chapter 69.40 RCW, and said violation solely involves the drug cannabis, com-

that he had been paid to transport the marijuana across the Canadian border for collection by parties unknown;

"CONCLUSIONS OF LAW

"I

"The definition of sale under 69.33.220 applies to transactions involving the dangerous drug marijuana;

"II

"The action of transporting a large amount of marijuana on behalf of another party, which transport would cross international borders and be left for collection by parties known or unknown constitutes sale as defined in RCW 69.33.220;

"III

"The possession of the large quantity of marijuana with the stated intent to transfer as detailed above, constitutes violation of RCW 69.40.070 'Possession of a Dangerous Drug with Intent to Sell.' "

monly known as marihuana, shall, upon conviction, be fined and imprisoned as herein provided:

(1) For the first offense, the offender shall be guilty of a misdemeanor, and punishable by a fine not exceeding five hundred dollars or by imprisonment in the county jail, not exceeding six months, or by both such fine and imprisonment;

. . .

(5) Except as provided in subsection (4) of this section, for any sale of cannabis or for possession with intent to sell, the offender shall be guilty of a felony and shall be fined not more than five thousand dollars and be imprisoned in the state penitentiary not less than three nor more than ten years. In any prosecution under this section, proof that a person unlawfully possessed in excess of 40 grams of cannabis shall be prima facie evidence that possession was with intent to sell.

RCW 69.40.110 provides:

Cannabis as now or hereafter defined by the Washington state board of pharmacy shall be a dangerous drug as defined herein and accordingly shall be subject to the provisions of chapter 69.40 RCW and shall not be considered a narcotic drug and accordingly not subject to the provisions of chapter 69.33 RCW as now law or hereafter amended.

■ Not only does the legislature specifically direct that marijuana shall not be considered a narcotic drug but it provides that it is not subject to the provisions of chapter 69.33. To borrow the definition of the term "sale" as defined under the narcotic drug statute and apply it to the dangerous drug statute would violate the express terms of the statutes which now treat marijuana solely as a dangerous drug.

■ The state argues alternatively, that section 69.40.060 of the dangerous drug act would authorize a liberal construction of the word "sale" to include "distribute." Including only the terms in question we find the statute provides: "It shall be unlawful for a person . . . to sell . . . or distribute any part of the plant . . . commonly known as marihuana." The disjunctive "or"

clearly differentiates between "sale" and "distribute" and in effect makes them separate methods of violating the law.

The Uniform Narcotic Drug Act specifically provides for a much broader interpretation of the word "sale" in offenses which fall under the provisions of that act, by reason of the statutory definition of the word "sale." In the absence of such a broad statutory interpretation, we must interpret the term "possession with intent to sell" in the context of the usual rules of statutory construction. In this respect we find that criminal statutes, especially those inflicting a penalty of imprisonment in the penitentiary, must be strictly construed. *State v. Lewis,* 46 Wn.2d 438, 282 P.2d 297 (1955).

We therefore conclude that possession of the dangerous drug marijuana with intent to sell means exactly what the usual and ordinary meaning implies—that he was in possession of the marijuana with the intent to sell it.

Relying on the statutory presumption, the state next contends that "proof that a person unlawfully possesses in excess of 40 grams of cannabis shall be prima facie evidence that possession was with intent to sell." The state further argues that the possession of a large quantity of marijuana with the stated intent to transport it constitutes a violation of RCW 69.40.070 in that it proves an intent to sell.

In support of this position the state cites *People v. Gordon,* 10 Cal. App. 3d 454, 89 Cal. Rptr. 214 (1970). In that case the court held that the sole purpose of the possession was established by the quantity of *narcotics,* the manner of packaging and the opinion of an expert that the narcotic was packaged for sale.

As we have previously stated, narcotic statutes are of little value in interpreting the terms "sale" or "intent to sell" in the dangerous drug act because of the broad definition of such terms in the narcotic drug statutes. Furthermore, the findings of fact did not dispute defendant's contention that he had been hired to transport the marijuana

across the Canadian border and did not know what was to be done with it after he delivered the marijuana. There is nothing in the stipulated facts, the testimony of defendant, or the findings of fact that would justify the trial court in finding defendant was in possession of the marijuana with intent to sell it. The quantity of marijuana is as consistent with distribution as it is with possession with intent to sell.

█ The state relies strongly upon the presumption that unlawful possession of marijuana in excess of 40 grams shall be prima facie evidence that possession was with intent to sell. The statute makes proof of one fact prima facie evidence of another. The only restriction on this power is that the fact proved must bear a rational connection to the ultimate fact presumed. (The trier of fact need give such a presumption only such weight as it seems to merit. *State v. Thomas,* 58 Wn.2d 746, 364 P.2d 930 (1961); *see State v. Larsen,* 4 Wn. App. 356, 481 P.2d 462 (1971); Annot., 23 L. Ed. 2d 812 (1970). Obviously the possession of two postal bags containing 76 bricks of marijuana could be given substantial weight with the trier of fact. The court, however, accepted the defendant's explanation that he had been paid to transport the marijuana across the Canadian border.

█ Since the transportation of that large amount of marijuana is as consistent with distribution as it is with intent to sell the marijuana, the situation is at best equivocal. Where a defendant's acts are patently equivocal, a criminal intent to sell the marijuana cannot be inferred from the overt act of possession of that amount alone. *See State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968).

█ A presumption is not evidence. Its efficacy is lost when the opposite party produces prima facie evidence to the contrary. The trier of the facts could, however, find that the evidence presented was not credible and could reject that evidence. *Kay v. Occidental Life Ins. Co.,* 28 Wn.2d 300, 183 P.2d 181 (1947). In this case the evidence, stipulated facts and the court's findings of fact were in accord with the explanation that defendant was hired to transport the marijuana across the border. For the various

reasons we have heretofore explained, the efficacy of the statutory presumption of intent to sell has failed and the state has not proven its case.

The state has cited an unpublished opinion of this division of the Court of Appeals. The unpublished opinion would not have changed the result of this case, but we feel called upon to explain why the Court of Appeals will not consider an unpublished opinion to have precedential value. In Laws of 1971, ch. 41, § 1, the legislature amended RCW 2.06.040. The amended portion reads as follows:

> In the determination of causes all decisions of the court shall be given in writing and the grounds of the decisions shall be stated. All decisions of the court having precedential value shall be published as opinions of the court. Each panel shall determine whether a decision of the court has sufficient precedential value to be published as an opinion of the court. Decisions determined not to have precedential value shall not be published.

In enacting this amendment the legislature recognized that opinions which do not have sufficient precedential value to affect the common law of our state should not be published. To continue the publication of cases which merely restate well established principles of the law fills up our bookshelves, complicates legal research and will inevitably adversely affect the computerization of the case law of our state.

We therefore hold that unpublished opinions of the Court of Appeals will not be considered in the Court of Appeals and should not be considered in the trial courts. They do not become a part of the common law of the state of Washington. If the trial courts were to consider them it would not only be wasteful of their time but would permit any group of lawyers to collect such opinions and create an unfair advantage by citing cases not available to their opponents.

In determining whether a case has sufficient precedential value to justify publication we are considering the following criteria:

OPINIONS OF THE COURT OF APPEALS
SHOULD BE PUBLISHED:

(1) Where the decision determines an unsettled or new question of law or constitutional principle.

(2) Where the decision modifies, clarifies or reverses an established principle of law.

(3) Where the decision is of general public interest or importance.

(4) Where the case is in conflict with a prior opinion of the Court of Appeals.

(5) Where the decision is not unanimous.

OPINIONS OF THE COURT OF APPEALS
SHOULD NOT BE PUBLISHED:

(1) Where an affirmance is based upon the conclusion that the evidence is sufficient to sustain the findings of fact of the trial court, except where the issue of sufficiency involves a novel or important question of law.

(2) Where the decision, whether an affirmance or reversal, is determined by following a legal principle or principles well-established by previous decisions.

(3) Where the decision, whether an affirmance or reversal, is based upon a question of practice or procedure, except where the question is one of such importance in the administration of the law that it should be settled by an authoritative pronouncement.

In conclusion we turn to the consideration of the disposition of this appeal. In this respect we do not disagree with the deep concern that the state has expressed about the serious nature of this offense. Distribution is an important factor in the traffic in either narcotic or dangerous drugs. We cannot, however, judicially legislate to accomplish the objectives sought by the state.

Since possession of marijuana for any purpose other than "with intent to sell" has been determined to be a misdemeanor, we must consider that the defendant is clearly guilty of that lesser included offense. Defendant

has been incarcerated since the day of his arrest with a bond fixed at $25,000. He was arrested on September 1, 1970 and he was sentenced to not more than 10 years and not less than 3 years in a penal institution on January 7, 1971. The maximum term he could receive for the misdemeanor of possession of a dangerous drug, for a first offense, is 6 months in the county jail. Giving him credit for the time he served prior to trial, he has now served 14 months in jail and in prison. For this reason defendant seeks a dismissal of this charge rather than a new trial on the lesser included offense of possession of the dangerous drug marijuana. We believe that the ends of justice would be best served and the county spared the expense of a new trial by granting that request.

The judgment is reversed and the defendant will be released from custody.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied December 8, 1971.

Review denied by Supreme Court January 14, 1972.