# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ERIC HOOD, an individual, | DIVISION ONE |
| Appellant/Cross-Respondent, | No. 85075-0-I |
| v. | UNPUBLISHED OPINION |
| CITY OF LANGLEY, a public agency, | |
| Respondent/Cross-Appellant. | |

DWYER, J. — Eric Hood appeals from the order of the superior court imposing a lower range Public Records Act[1] monetary penalty against the City of Langley as a result of the City's violation of the act in responding to his records request. On appeal, Hood asserts that the superior court abused its discretion by imposing a penalty in the lower statutory range. In so asserting, Hood challenges only the court's application of law to one out of the nine penalty factors that the court considered in imposing the lower-end penalty. Because we do not conduct piecemeal evaluations of such penalty factors and because, reviewed holistically, the trial court's penalty determination in this matter plainly does not evince a manifest abuse of discretion, we affirm the superior court's ruling.

---

[1] Ch. 42.56 RCW.

The City of Langley, for its part, appeals from the superior court's order denying the City's motion for sanctions against Hood based on his filing of a motion for reconsideration, itself filed in response to the court's order imposing the penalties here in question. Because the trial court did not err in denying the City's motion for sanctions, we also affirm that ruling.

I

In early January 2016, Eric Hood e-mailed the City of Langley requesting numerous records associated with its former mayor.[2] A records custodian for the City responded shortly thereafter, indicating that the City had records that were responsive to his request and inviting Hood to schedule a time to visit city hall to review them. Over the next month, Hood and the records custodian communicated back-and-forth regarding his records request. Hood visited city hall twice in order to examine the records made available to him.

During this time, however, Hood requested and was denied permission to search on the former mayor's laptop for responsive electronic records, including, as pertinent here, the former mayor's digital calendar. Hood then e-mailed the City asking to review the former mayor's electronic records. The records custodian later responded to that e-mail, providing certain electronic records located in the laptop's hard drive and a log explaining the City's redactions to those records. Hood then requested to search the laptop's files himself. The records custodian replied that, although she did not currently have time to

---

[2] More specific background in this case was previously set forth in Hood v. City of Langley, No. 77433-6-1, slip. op. at 1-4 (Wash. Ct. App. Jan. 28, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/774336.pdf.

supervise his search of the laptop, if he could specify what records he was looking for on the laptop, she could then determine whether it contained responsive records.

In February 2016, Hood, representing himself, sued the City alleging that its response to his records request violated the Public Records Act.

One month later, in March 2016, Hood sent another e-mail to the City, with this e-mail purportedly clarifying that, in his prior correspondence with the City, he had not intended to narrow his original records request.[3]

More than one year later, in May 2017, the City moved for summary judgment, which the trial court granted.

Hood appealed the trial court's summary judgment order to this court. In January 2019, we reversed and remanded the matter for further proceedings, concluding that there were "issues of fact as to the adequacy of the City's search and compliance" with the act, that "[t]here is a genuine issue of fact as to whether the City performed an adequate search for responsive electronic documents before the City issued its January 8, 2016, response," including an adequate search for the former mayor's electronic calendars stored on his laptop, and that "there is a genuine issue of fact as to whether Hood intended to narrow his January 5, 2016, request, as the City contends, or whether the January 15, 2016, request was a new request, as Hood contends." Hood v. City of Langley, No.

---

[3] It appears that, likely due to the voluminous record in this matter, neither party brought Hood's March 2016 e-mail to the attention of the trial court during the 2017 summary judgment proceeding nor to this court during Hood's subsequent appeal from that proceeding. It was not until 2022 that the City learned that it had received Hood's March 2016 e-mail when it was originally sent and subsequently informed the trial court of this.

77433-6-1, slip. op. at 1, 6-11 (Wash. Ct. App. Jan. 28, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/774336.pdf.

One month later, in February 2019, the City provided Hood with a copy of the former mayor's digital calendar.

More than three years later, in the spring of 2022, Hood filed a motion for partial summary judgment requesting that the trial court determine that the City had violated the Public Records Act in responding to his records request with regard to the former mayor's digital calendars. In July 2022, the trial court granted Hood's motion. Thereafter, the trial court determined that the City had fair notice of the scope of Hood's request as of March 2016, thereby finding the City liable under the act during the period of March 2016 to February 2019.

In November 2022, the City requested that, in light of its violation of the act, the trial court determine a reasonable attorney fee award against it and whether imposition of penalties was warranted. The trial court granted the City's request, issuing an award of attorney fees to Hood and, as pertinent here, imposing a penalty of $5,315.00 against the City—"a daily penalty of $5 multiplied by 1,063 days"—after finding that four mitigating factors supported a lower range penalty and that no aggravating factors supported increasing the amount of the penalty imposed against the City.

Hood asked the trial court to reconsider the penalty portion of its order, which the court denied. The City, in response to Hood's motion for reconsideration, filed a motion for sanctions, which the court also denied.

Hood and the City now appeal.

4

II

Hood asserts that the trial court abused its discretion in imposing a penalty against the City in the lower range of penalties available for a Public Records Act violation. The trial court erred, Hood contends, because the court applied an incorrect legal standard to one out of the nine judicially created penalty factors that the court considered in exercising its discretion as to the amount of the penalties that it would impose. Because the legislature has conferred considerable discretion to trial courts when determining Public Records Act penalties, because our Supreme Court has repeatedly emphasized that such a determination must be reviewed holistically for its overall reasonableness and that no one penalty factor should control appellate review of any such determination, and because a holistic review of the trial court's determination in this matter reveals that no abuse of discretion occurred, Hood's assertion fails.

A

RCW 42.56.550(4) provides that "it shall be *within the discretion of the court* to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." (Emphasis added.) Accordingly, our Supreme Court instructed,

> "the plain language of the [Public Records Act (PRA)] confers great discretion on trial courts to determine the appropriate penalty for a PRA violation." Wade's Eastside Gun Shop, Inc. v. Dep't of Labor & Indus., 185 Wn.2d 270, 278, 372 P.3d 97 (2016). "Since enacting the PRA, the legislature has afforded courts more—not less—discretion in setting penalties for PRA violations," first by changing the penalty range from not more than $25 to between $5 and $100, and then by removing the mandatory minimum penalty.

Id. at 278-79 (citing LAWS OF 1992, ch. 139, § 8; LAWS OF 2011, ch. 273, § 1).

In recognition of this statutory grant of discretion, it is now well settled law that "'[t]he trial court's determination of appropriate daily penalties is properly reviewed for an abuse of discretion.'" [Yousoufian v. Office of Ron Sims, 168 Wn.2d 444, 458, 229 P.3d 735 (2010) (Yousoufian II)] (quoting Yousoufian v. Office of King County Exec., 152 Wn.2d 421, 431, 98 P.3d 463 (2004) (Yousoufian I)); see also Wade's, 185 Wn.2d at 277; Sargent v. Seattle Police Dep't, 179 Wn.2d 376, 397, 314 P.3d 1093 (2013); King County v. Sheehan, 114 Wn. App. 325, 350-51, 57 P.3d 307 (2002).

To guide trial courts in their exercise of discretion, we set forth "relevant factors for trial courts to consider in their penalty determination" in Yousoufian II. 168 Wn.2d at 464. We specified seven "mitigating factors that may serve to decrease the penalty" and nine "aggravating factors that may support increasing the penalty." Id. at 467-68.

Hoffman v. Kittitas County, 194 Wn.2d 217, 224, 449 P.3d 277 (2019) (footnotes omitted).

The factors provided by the court were as follows:

[M]itigating factors that may serve to decrease the penalty are (1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.

Conversely, aggravating factors that may support increasing the penalty are (1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) *agency dishonesty*; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's

misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

Yousoufian, 168 Wn.2d at 467-68 (emphasis added) (footnotes omitted).

And in Hoffman, the court reiterated that it intended for those factors

to "provide[ ] guidance to trial courts, more predictability to parties, and a framework for meaningful appellate review." [Yousoufian II, 168 Wn.2d] at 468. But we "emphasize[d] that the factors may overlap, are offered only as guidance, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations. *Additionally, no one factor should control.*" Id. And we cautioned that *"[t]hese factors should not infringe upon the considerable discretion of trial courts to determine PRA penalties."* Id. In other words, Yousoufian II articulated guidelines for trial courts deciding whether to impose a penalty (and if so, how much) for a PRA violation.

194 Wn.2d at 225 (emphasis added).

Therefore, as our Supreme Court instructed, "our task is to review the trial court's overall penalty assessment for abuse of discretion.'" Hoffman, 194 Wn.2d at 228.

"A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons." Yousoufian II, 168 Wn.2d at 458. "A trial 'court's decision is "manifestly unreasonable" if "the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable person would take.'"'" Id. at 458-59 (quoting Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting State v. Lewis, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990)))). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." Rohrich, 149 Wn.2d at 654 (quoting State v. Rundquist, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)); see also State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

Hoffman, 194 Wn.2d at 229.

7

Again, we review the trial court's "overall penalty decision 'holistically,'" to determine whether "'the trial court's assessment [was] inadequate [or adequate] in light of the totality of relevant circumstances.'" Hoffman, 194 Wn.2d at 228 (second alteration in original) (quoting Hoffman v. Kittitas County, 4 Wn. App. 2d 489, 497-49, 422 P.3d 466 (2018), aff'd, 194 Wn.2d 217, 449 P.3d 277 (2019)).

B

Hood asserts that the trial court abused its discretion in imposing a low-end Public Records Act penalty against the City of Langley. We disagree.

1

Hood contends that the trial court abused its discretion by applying an incorrect legal standard to the "agency dishonesty" factor, one of the nine factors that the trial court considered in imposing its penalty determination. In so doing, Hood urges us to engage in a de novo review of the trial court's consideration of that single Yousoufian II factor. Because we do not engage in a piecemeal review of a trial court's penalty determination, we decline Hood's request to do so.

Our Supreme Court's decision in Hoffman is instructive. There, the court explained that

> Hoffman asks us to engage in de novo review of two of the Yousoufian II factors that guide trial courts as they exercise this discretion, "the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions," a mitigator, and the agency's "negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA," an aggravator. 168 Wn.2d at 467-68 (footnote omitted)
> But as we have said before, RCW 42.56.550(4)'s grant of discretion in awarding PRA penalties "is meaningful only if

appellate courts review the trial court's imposition of that penalty under an abuse of discretion standard of review." Yousoufian I, 152 Wn.2d at 431. "[A]n appellate court's 'function is to review claims of abuse of trial court discretion with respect to the imposition or lack of imposition of a penalty, not to exercise such discretion ourselves.'" Id. at 430 (quoting Sheehan, 114 Wn. App. at 350-51). The Yousoufian II factors are judicially crafted guidelines that overlay a statutory grant of trial court discretion. They "may overlap, *are offered only as guidance*, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations." Yousoufian II, 168 Wn.2d at 468 (emphasis added).

Hoffman correctly notes our holding that "'[w]hen determining the amount of the penalty to be imposed the existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider.'" Id. at 460 (second alteration in original) (internal quotation marks omitted) (quoting Amren[ v. City of Kalama], 131 Wn.2d [25,] 37-38[, 929 P.2d 389 (1997)]). But that alone does not entitle him to de novo review of this Yousoufian II factor. He ignores our holding that a trial court abuses its discretion by focusing exclusively on bad faith without considering either the remaining Yousoufian II factors or any other appropriate considerations. Sargent, 179 Wn.2d at 397-98; see also Yousoufian II, 168 Wn.2d at 460-61 (stating that "no showing of bad faith is necessary before a penalty is imposed" and that "a strict and singular emphasis on good faith or bad faith is inadequate to fully consider a PRA penalty determination"). Engaging in de novo review of the bad faith factor would risk distorting its role as one piece of a holistic, discretionary determination of the appropriate penalty amount.

Trial courts' adherence to the guidelines we set forth in Yousoufian II helps ensure that they do not abuse their discretion. Cf. Sargent, 179 Wn.2d at 397-98 (holding that the trial court abused its discretion by focusing exclusively on agency bad faith). Articulating the basis for a penalty award in terms of the Yousoufian II framework helps trial courts spell out their reasoning in a way that facilitates meaningful appellate review. Yousoufian II, 168 Wn.2d at 468. But appellate review is undertaken using an abuse of discretion standard—not by engaging in piecemeal de novo review of individual Yousoufian II factors.

Hoffman, 194 Wn.2d at 227-28.

Given that, we decline Hood's request to engage in a piecemeal de novo review of a single Yousoufian II factor. Our Supreme Court has repeatedly

9

emphasized: "'no one factor should control.'"  Hoffman, 194 Wn.2d at 225

(quoting Yousoufian II, 168 Wn.2d at 468).  We will thus not risk distorting the

statutorily conferred discretion granted to the trial court—nor the standard of

review set forth by our Supreme Court—for the sake of single-mindedly

evaluating a single factor.  To do so neither gives meaning to the intention of our

legislation in conferring such discretion, nor aligns with the intention of our

Supreme Court to provide "'guidance to trial courts, more predictability to parties,

and a framework for meaningful appellate review.'"  Hoffman, 194 Wn.2d at 225

(quoting Yousoufian II, 168 Wn.2d at 468).  Thus, we decline Hood's request for

de novo review of the trial court's consideration of the "agency dishonesty"

factor.[4]

---

[4] Hood nevertheless urges us to determine whether the trial court erred in relying on a decision from Division Two of this court, O'Dea v. City of Tacoma, 19 Wn. App. 2d 67, 493 P.3d 1245 (2021), as support for its finding that the City did not act dishonestly in this matter.  Given all of the foregoing analysis, the following is provided for guidance only.

As applicable here, the panel in O'Dea ruled that a public agency is placed on "fair notice" of a Public Records Act request when such request is made in the context of litigation. Significantly, the panel elected to publish that portion of its decision.  19 Wn. App. 2d at 71, 81-83, 91-92.  In so doing, the panel plainly believed that the "fair notice" portion of its "decision . . . clarifie[d] . . . an established principle of law."  State v. Fitzpatrick, 5 Wn. App. 661, 668-69, 491 P.2d 262 (1971); see also RAP 12.3(d); RCW 2.06.040.

Subsequent to the issuance of that decision, the trial court herein found as follows:
> **The Court finds that the City did not act with any dishonesty.**  This Court was guided by O'Dea, 19 Wn. App. 2d 67, which it found to be persuasive of the conclusion that an agency can be notified during a lawsuit of the meaning of a never-received or previously unclear PRA request.  7/28/22 Letter Ruling at 8.  In O'Dea, the court found that the city had notice of an outstanding PRA request when it was referenced in a complaint filed with the court.  Notably, O'Dea was decided more than two years after the City produced the calendar that is the sole issue remaining from Mr. Hood's lawsuit.  The City itself could not have been guided by O'Dea.

The trial court did not err in its application of O'Dea.  Division Two of this court issued its ruling in O'Dea years after Hood's records request, the City's response to his request, and the City's eventual production of the digital calendar in question.  The O'Dea panel's election to publish its decision in part signals its belief that the published portion of the opinion clarified a principle of law.  The panel clearly signaled that its decision was precedential, i.e., that it stated a new development in the law.  Fitzpatrick, 5 Wn. App. at 668-69.  From this, the trial court properly reasoned that, prior to the O'Dea decision, the City could not have reasonably known that it was the state of the law that an e-mail from Hood occurring in the context of litigation constituted a

2

Given the foregoing, the remaining issue for us to review with regard to the trial court's imposition of penalties in this matter is whether the trial court's overall penalty assessment reflects a manifest abuse of discretion. It does not.

Neither party challenges the trial court's factual findings in this matter. Therefore, the factual findings set forth in the trial court's ruling are verities on appeal. Hoffman, 194 Wn.2d at 219-20 (citing Yousoufian II, 168 Wn.2d at 450)). Moreover, when an appellant "does not challenge any of the factual findings underlying the trial court's penalty assessment, our review is limited to the legality of the trial court's approach and overall reasonableness of its selected remedy." Hoffman, 4 Wn. App. 2d at 498.

Here, the trial court entered an order that expressly considered 9 out of the 16 Yousoufian II mitigating and aggravating factors. The trial court first found that four mitigative factors were present in this matter.

> 13. **The City promptly responded, followed up with, and was helpful to Mr. Hood.** The City complied with the PRA's five-day response requirement. RCW 42.56.520(1). In fact, the City responded within three days of Mr. Hood's January 5, 2016 request. The City notified Mr. Hood that all of the records responsive to his request were available for his review, to wit: "6 boxes, 25 binders and on a laptop located here at Langley City Hall." This response was proper under the PRA. Hoffman, 4 Wn. App. 2d at 499 (The County "responded within five working days . . . . While the response of the sheriff's office to Hoffman's initial PRA request was incomplete, that was not an independent aggravating factor. It is instead what caused the PRA violation in

clarification of the scope of his public records request. As a corollary, the trial court also reasoned that the City could not have modified the timing of its production of the record in question in response to the ruling in O'Dea. Thus, in determining that there was an absence of "agency dishonesty" in this matter, in reliance on O'Dea, the trial court did not incorrectly apply the law.

the first place. . . . No further enhancement was required based on lack of timely compliance."); West v. Thurston [County], 168 Wn. App. 162, 190, 275 P.3d 1200 (2012) (approving the trial court's finding that "the County timely responded to West's PRA request within four days, even though this initial response wrongly denied West's request"); Hood v. Nooksack, No. 82081-8-I, 18 Wn. App. 2d 1050, *7 n.11 (Aug. 2, 2021) (unpublished) ("The PRA does not authorize a separate penalty for conducting an inadequate search.").

14. When Mr. Hood emailed the City with follow-up questions on January 10, 2016, the City responded the next day. When he visited the City's offices and inspected the voluminous hard copy records responsive to his request, the City's Clerk copied the records he identified for copying.[5]

16. On January 27, 2016, within less than a month, the City completed its response to Mr. Hood's narrowed January 5, 2016 request and so advised him.

17. **The City acted with good faith and honesty and complied with the PRA's procedural requirements.** "When determining the amount of the penalty to be imposed the existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider." Yousoufian, 168 Wn.2d at 460. The evidence amply demonstrates the City's good faith and honesty in responding to Mr. Hood's initial January 5, 2016 request and his January 15, 2016 email.

18. **The City promptly brought in a lawyer to assist**. West, 168 Wn. App. at 190 (approving the trial court's finding that "the County demonstrated adequate training and supervision of the County's personnel with respect to PRA requests because the County assigned the responsibility to respond to Mr. West's PRA request to a licensed, practicing attorney who has specific knowledge of the issues presented in" the case) (quotation marks & brackets omitted). The City engaged a PRA lawyer to look at the January 15, 2016 email and provide [the records custodian] advice. Mr. Hood sent his March 1, 2016 email providing notice of his "un-narrowed" January 5, 2016 request to the City's outside counsel.

19. **The City's explanation for noncompliance is reasonable.** This Court found the City's explanation for noncompliance before March 1, 2016 eminently reasonable. 7/28/22 Letter Ruling at 7. "Mr. Hood's January 5, 2016 public records request is fairly characterized as seeking everything but the kitchen sink related to Mayor McCarthy." Id. at 6. "[I]t was reasonable for [the records custodian] to regard her conversation with Mr. Hood on January 15, 2016, during the hours-long sessions

_____

[5] The superior court judge, when signing the proposed amended order in this matter, excised paragraph 15 from that proposed order.

of tangible document production as a clarification and/or modification of his initial public records request." Id. "(T)his Court also finds that the City had no reason to know that Mr. Hood had a different idea, or would come to have a different idea, than [the records custodian] about the significance of his January 15, 2016 email as an initial matter." Id. at 6-7. See also Hood v. S. Whidbey School Dist., 2016 WL 4626249, No. 73165-3-1, 195 Wn. App. 1058, *17 (unpublished) (Sept. 6, 2016) (approving the trial court's finding that the agency's "explanations for particular oversights in its searches and productions were 'reasonable and fully understandable in light of the numerous broad and overlapping requests with which it was faced'"), review denied, 187 Wn.2d 1020 (2017). This Court also recognized that in March 2016 and thereafter, the former mayor's calendar was "fairly regarded as a minor point" as "the principal bone of contention between the parties in the 2017 summary judgment briefing was the production (and destruction) of Mayor McCarthy's personal journals," 7/28/22 Letter Ruling at 7, issues on which Mr. Hood lost in this lawsuit.

The court next found that no aggravating factors were present.

21. **The Court finds that the City did not act with any dishonesty.** This Court was guided by O'Dea, 19 Wn. App. 2d 67, which it found to be persuasive of the conclusion that an agency can be notified during a lawsuit of the meaning of a never-received or previously unclear PRA request. 7/28/22 Letter Ruling at 8. In O'Dea, the court found that the city had notice of an outstanding PRA request when it was referenced in a complaint filed with the court. Notably, O'Dea was decided more than two years after the City produced the calendar that is the sole issue remaining from Mr. Hood's lawsuit. The City itself could not have been guided by O'Dea.

22. **The calendar was of no public importance.** The calendar was of no foreseeable public importance. "An agency should not be penalized under this factor, however, unless the significance of the issue to which the request is related was foreseeable to the agency." Yousoufian, 168 Wn.2d at 462; see also Hood v. S. Whidbey School Dist., 195 Wn. App. 1058 at *17 (approving the trial court's finding that there was no public importance as "'the overwhelming majority of Hood's requests were directly related to his personal challenge to his nonrenewal as a teacher,'" the very issue that drove Mr. Hood to make his January 5, 2016 PRA request to the City about former Mayor McCarthy, the individual who long ago fired him at South Whidbey School District).

23. **Mr. Hood did not experience any foreseeable personal economic loss as a result of the delay in receiving**

**the calendar**.  The delay in Mr. Hood's receipt of the calendar caused him no personal economic loss.  Moreover, an agency should "be penalized for such a loss only if it was a foreseeable result of the agency's misconduct.  In short, actual personal economic loss to the requestor is a factor in setting a penalty only if it resulted from the agency's misconduct and was foreseeable." Yousoufian, 168 Wn.2d at 461-62; accord Zink[ v. City of Mesa], 4 Wn. App. 2d [112,] 126 [419 P.3d 847 (2018)] ("compensating a plaintiff should be a factor in increasing a penalty only if an economic loss to the record requestor was a foreseeable result of the agency's misconduct").  There was no foreseeable economic loss here.

24.    **The City did not act with negligence, recklessness, wantonly or in bad faith, nor did it intentionally fail to comply with the PRA**.  The City was not intransigent.

Given all that, the trial court found that "[n]o penalty above the bottom end of the statutory range is necessary to deter future misconduct considering the City's size and the facts of this case."  This was so, the court found, because "Langley is a small City with only 1,147 residents[,] the penalty needed to deter a small city and that necessary to deter a larger public agency is not the same," and

> [t]he sole PRA violation here arose from Mr. Hood's unclear communications with the City (or his after-the-fact interpretations of those communications), not with the City's process for responding to PRA requests.  The City responded to the request nearly seven years ago by way of a [records custodian] who long ago left her job with the City.

Therefore, "[b]ased on consideration of all of these factors, the entire statutory penalty range, the facts as found by this Court, and the City's size," the trial court imposed against the City "a daily penalty of $5 multiplied by 1,063 days, for a penalty of $5,315.00."

The trial court did not abuse its discretion.  No part of the trial court's decision appears to be manifestly unreasonable, or to have been based on

14

untenable grounds or reasons. Indeed, the trial court's determination—including its consideration of the vagueness of Hood's request, the manner in which the City responded to that request, the public importance of the record in question, the length of time that Hood went without the record in question, the absence of a need for further deterrence, and the City's small size—was clearly a determination that a reasonable judge could make based on the facts before the trial court in this matter. Moreover, the trial court's findings are amply supported by the record and the court provided well-reasoned legal analysis in support of its ruling.

Thus, the trial court did not abuse its discretion by imposing a low-end Public Records Act penalty against the City of Langley. Accordingly, Hood fails to establish an entitlement to appellate relief on this claim.

III

The City, for its part, asserts that trial court erred by denying its motion to impose sanctions against Hood for his request that the trial court reconsider the portion of its order regarding Public Records Act penalties. The trial court did not err in so ruling.

We may affirm a trial court's ruling on any ground supported by the record. Wash. Fed. Sav. & Loan Ass'n v. Alsager, 165 Wn. App. 10, 14, 266 P.3d 905 (2011) (citing King County v. Seawest Inv. Assocs., LLC, 141 Wn. App. 304, 310, 170 P.3d 53 (2007)).

Here, in April 2022, the City asked the trial court to determine whether the City had violated the Public Records Act in responding to Hood's records

request. In July 2022, the trial court determined that the City had violated the act. In so doing, the court relied on a portion of the ruling in O'Dea—that a public agency has fair notice of a public records request when that request occurs in the context of litigation—as part of determining the specific timing of the City's violation of the act in response to Hood's records request.

In November 2022, the City asked the trial court to determine a reasonable amount to award Hood for attorney fees and whether a penalty should be imposed against the City in light of the violation found. In that pleading, the City urged the trial court to adopt a penalty award at the low-end of the statutory range. In so doing, the City argued that the Yousoufian II mitigating factor pertaining to "the reasonableness of any explanation for noncompliance by the agency" supported a lesser penalty, based on the proposition that the City could not have been guided by the "fair notice" ruling in O'Dea because the decision was issued long after the City had already complied with the act with regard to Hood's records request.

In response, Hood argued that O'Dea did not establish the existence of such a mitigating factor, averring that the City's noncompliance was not reasonable. In a separate section of his response, Hood argued that the City had acted dishonestly for the purpose of imposing a greater penalty. Notably, he did not present the trial court with an argument regarding the "agency dishonesty" factor predicated on O'Dea.

In January 2023, the trial court issued an order granting the City's motion regarding an award of attorney fees and imposition of penalties arising from the

City's violation of the Public Records Act. In so doing, the trial court, for the first time, relied on O'Dea for the purpose of finding that the "agency dishonesty" aggravating penalty factor was not present in this matter.

In February 2023, Hood filed a motion for reconsideration requesting that the court reconsider its reliance on O'Dea for the purpose of the "agency dishonesty" factor. Shortly thereafter, the City filed a motion for sanctions arising from Hood's recently filed motion for reconsideration. The trial court denied the City's request for sanctions.

The trial court did not err by denying the City's motion for sanctions. The record reflects that Hood filed a motion for reconsideration of the court's reliance on O'Dea for the purpose of determining the Yousoufian II "agency dishonesty" factor. At that point in the litigation, however, Hood had neither presented the trial court with—nor had the City's arguments presented him with the opportunity—to present the trial court with argument concerning whether O'Dea should be relied on for the purpose of the court's consideration of the "agency dishonesty" penalty factor. Indeed, the trial court's partial summary judgment ruling relied on O'Dea for the purpose of establishing the timing of the City's Public Records Act violation, and the City's motion for a penalty determination relied on O'Dea not for the purpose of establishing the absence of "agency dishonesty" but, rather, for the purpose establishing the reasonableness of its explanation for its noncompliance with the act. Therefore, at the time that Hood filed the motion for reconsideration in question, the court had not yet been presented with argument relating to whether the court properly relied on O'Dea

for the purpose of the court's "agency dishonesty" penalty factor ruling. Hence, given the evolving legal theories presented to the court, it was not unreasonable for the trial court to deny the City's request for sanctions.

Thus, the trial court did not err by denying the City's motion for sanctions. Accordingly, the City's appellate assertion fails.[6]

IV

Hood requests an award of attorney fees should he prevail on appeal. The Public Records Act authorizes an award of attorney fees to a prevailing party. RCW 42.56.550(4). However, Hood is not the prevailing party in this matter with regard to the issue arising from the Public Records Act. Hood also requests an award of attorney fees pursuant to RAP 18.9(a) arising from the City's appeal of the trial court's order denying the City's request for sanctions. However, given the nature of this matter, the City's appeal was not frivolous.

Thus, Hood does not establish an entitlement to an award of attorney fees. We deny his requests.

Affirmed.

_Dwyer, J._

---

[6] The City also asserts that the trial court erred by not providing any explanation of its basis for denying its motion for sanctions. Again, we may affirm the trial court's ruling on any ground supported by the record. Alsager, 165 Wn. App. at 14 (citing Seawest Inv. Assocs., LLC, 141 Wn. App. at 310). As set forth above, the record contains an adequate basis to affirm the trial court's denial of the City's motion for sanctions. The City next asserts that the trial court abused its discretion by not, sua sponte, imposing sanctioning against Hood pursuant to the court's inherent authority to do so in response to a party's bad faith delay or disruption of the proceedings. Again, for the reasons stated herein, the City's assertion is unavailing.

WE CONCUR:

Díaz, J.

_____